**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PAUL BOERGER t/a<br>    CANBY PARK APARTMENTS, | :<br>:<br>: | |
| Plaintiff, | :<br>: | |
| v. | : | Civil Action No. 04-1337 |
| COMMERCE INSURANCE SERVICES<br>    and VINCENT PANARELLO, | :<br>:<br>:<br>: | |
| Defendants/<br>Third-Party Plaintiffs, | :<br>:<br>: | |
| v. | :<br>: | **OPINION** |
| MT. HAWLEY INSURANCE COMPANY,<br>    a subsidiary of RLI INSURANCE<br>    GROUP, | :<br>:<br>:<br>: | |
| Third-Party Defendant. | : | |

**Appearances:**

Robin J. Gray, Esquire
Law Offices of Robin J. Gray, Esquire
P.O. Box 4322
Reading, PA 19606
    Attorney for Plaintiff

Christopher P. Leise, Esquire
Robert E. Campbell, Esquire
White and Williams, LLP
Liberty View, Suite 400
457 Haddonfield Road
Cherry Hill, NJ 08002
    Attorney for Defendants/Third-Party Plaintiffs

1

**Rodriguez, Senior District Judge:**

This matter comes before the Court on Defendants Commerce Insurance Services's and Vincent Panarello's Motion to Dismiss [26], pursuant to Fed. R. Civ. P. 12(b)(6). Defendants have moved for dismissal of all Counts (One through Four) of Plaintiff Paul Boerger t/a Canby Park Apartments's Complaint. For the reasons discussed below, Defendants' motion is denied.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

In August 2002, Plaintiff met with Vincent Panarello ("Panarello"), an insurance agent of Commerce Insurance Services ("CIS") to secure commercial property and fire insurance for an apartment complex that he owned, Canby Park Apartments ("Canby Park"). (Cmpl. ¶ 7.) Plaintiff alleges that he informed Panarello that his mortgage company required full replacement cost, a minimum of $700,000.00 per building. (Cmpl. ¶ 8.)

Plaintiff asserts that Panarello researched different insurance companies and verbally assured him that he would be able to provide coverage that would at least meet the requirements of his mortgage company. (Cmpl. ¶ 9.) According to the Complaint, Plaintiff received a written proposal from Panarello setting forth that he would have total coverage of $7,801,700.00, (Cmpl. ¶ 10), and a binder from Mt. Hawley Insurance Company ("Mt. Hawley"), indicating blanket coverage in the amount of $9,374,400.00, (Cmpl. ¶ 11). Plaintiff alleges that he did not receive a copy of the insurance policy at this time. (Cmpl. ¶ 12.)

On December 23, 2002 a fire occurred at one of the structures in Canby Park. (Cmpl. § 12.) Plaintiff states that a Mt. Hawley adjuster inspected the loss, viewed the binder, and informed him that there was sufficient insurance coverage to cover the loss, (Cmpl. ¶ 13), which was approximately $700,000.00, (Cmpl. ¶ 14). Plaintiff alleges that he received letters on

December 23, 2002 and December 24, 2002 from Panarello, confirming coverage in the amount of at least $1,000,000.00 per covered loss with no specific building limitation noted.  (Cmpl. ¶¶ 19, 20.)  Plaintiff asserts that, notwithstanding these letters, Mt. Hawley reported that the actual coverage for the building was $450,650.00, rather than the blanket $1,000,000.00.  (Cmpl. ¶¶ 24, 25.)  Because Mt. Hawley refused to pay more than the stated value for the property involved, Plaintiff brought suit.  (Cmpl. ¶ 34.)

## DISCUSSION

Defendants move to dismiss pursuant to New Jersey's Affidavit of Merit Statute ("statute"),[1] which states, in pertinent part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

N.J. Stat. Ann. § 2A:53A-27 (2005).  The statute defines a "licensed person" as "any person who is licensed as . . . an insurance producer."[2]  Id. at 2A:53A-26(o) (2005).

---

[1] Federal courts sitting in diversity must apply New Jersey's Affidavit of Merit Statute. Fink v. Ritner, 318 F. Supp. 2d 225, 228 (D.N.J. 2004) (citing Chamberlain v. Giampapa, 210 F.3d 154, 157 (3d Cir. 2000)).

[2] As an initial matter, Plaintiff argues that the statute does not apply because neither CIS nor Panarello are "insurance producers."  However, insurance producer is defined as "a person required to be licensed under the laws of [New Jersey] to sell, solicit or negotiate insurance." N.J. Stat. Ann. § 17:22A-28 (2005).  Both CIS and Panarello fall within this definition. Moreover, Plaintiff repeatedly refers to Panarello as a "licensed professional" throughout his Complaint.  See, e.g., Complaint ¶¶ 40, 41.  Therefore, Plaintiff's argument that the statute does

The New Jersey Supreme Court has acknowledged that "the primary purpose of the statute is 'to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation.'" Fink v. Thompson, 772 A.2d 386, 391 (N.J. 2001) (quoting In re Petition of Hall, 688 A.2d 81, 87 (1997)) (further citations omitted). "Failure to comply with the statute, either strictly or substantially, will result in dismissal with prejudice, unless an exception applies." Fink, 772 A.2d at 228 (citing Cornblatt v. Barow, 708 A.2d 401, 415 (1998)) (internal citations omitted). When determining whether the statute applies to a claim against a licensed person, the Court must determine:

> (1) whether the action is for "damages for personal injuries, wrongful death or property damage" (nature of injury); (2) whether the action is for "malpractice or negligence" (cause of action); and (3) whether the "care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint fell outside acceptable professional or occupational standards or treatment practices" (standard of care).

Couri v. Gardner, 801 A.2d 1134, 1137-38 (N.J. 2002) (citing N.J. Stat. Ann. § 2A:53A-27).

**A. Negligence Claims**

Defendants argue that the statute applies to Plaintiff's negligence claims because they involve negligent procurement of insurance. Defendants contend that the common knowledge exception does not apply because Plaintiff's "professional liability claims against [CIS] and Panarello implicate the myriad of statutory and decisional law which defines the standard of care an insurance producer owes its clients." (Def. Br., p. 6.)

Plaintiff argues that the statute does not apply because it is clear that the insurance binder

---

not apply to insurance agents and brokers is without merit.

he received stating that there was blanket coverage for his buildings is completely different from the insurance policy that he received after the arson damage occurred.  (Pl. Opp., p. 4.)

The New Jersey Supreme Court has held that the statute does not apply to "common knowledge cases when an expert will not be called to testify 'that the care, skill or knowledge . . . [of the defendant] fell outside acceptable professional or occupational standards or treatment practices.'" Hubbard ex rel. Hubbard v. Reed, 774 A.2d 495, 497 (N.J. 2001) (quoting N.J. Stat. Ann. § 2A:53A-27.)  In Hubbard, the plaintiff went to the dentist to have her mandibular left lateral incisor removed; instead, her mandibular left second bicuspid was removed.  Id.  The trial court dismissed the plaintiff's complaint because she failed to file an affidavit of merit in accordance with the statute.  Id.  In reversing, the court reasoned that "in common knowledge cases an expert is not needed to demonstrate that a defendant breached a duty of care.  The doctrine applies where 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts.'" Id. at 499 (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 734 A.2d 778, 785 (N.J. 1999)).  Therefore, a plaintiff who asserts a common knowledge malpractice claim is not required to proffer expert testimony to establish the standard of care of a professional.

Defendants argue that the New Jersey Supreme Court's holding in Aden v. Fortish, 776 A.2d 792, 801 (N.J. 2000), which states that a claim for negligent procurement of insurance coverage is really one of professional malpractice, requires this Court to apply the statute to this

case; however, this argument is misplaced.  In Aden,[3] the plaintiff sought to purchase from the defendant insurance agent "a policy that would cover any losses [he] might have in [his] condo." Id. at 795.  The defendant insurance agent asked the plaintiff to contact his condominium association to verify type of coverage provided by the association.  Id. at 796.  The defendant offered the plaintiff a policy, which the plaintiff accepted.  Id.  Subsequently, the plaintiff suffered a loss and discovered that his coverage was inadequate.  Id.  At trial, the plaintiff proffered the testimony of an expert who testified that the "generally accepted procedure by which an insurance broker procures a condominium insurance policy for a client is to review the insured's condominium association policy before hand."  Id. at 797.  The expert opined that because the defendant did not review the plaintiff's condominium's insurance policy, he did not act in conformity with industry standards.  Id.

This case is different from Aden because, unlike the defendants there, Defendants here were not asked to use their care, skill or knowledge to assist Plaintiff is choosing a certain insurance policy.  Rather, the Defendants were asked to obtain a certain dollar amount of coverage and confirmed that dollar amount in various writings to Plaintiff.  It was not until Plaintiff suffered a loss that he learned that the dollar amount requested and the dollar amount procured were two different amounts.

Moreover, Plaintiff stated in his opposition that he will not rely on the testimony of an expert.  Although the common knowledge exception is to be construed narrowly in order to avoid noncompliance with the statute, the Court finds that Plaintiff's claims do not involve any special

---

[3] It is important to note that in Aden, the court did not approach the facts in the context of the applicability of the statute; however, its facts are instructive in this context.

care, skill or knowledge that is reserved to a licensed professional. Therefore, Plaintiff's claims are within the common knowledge of the average juror. Accordingly, Defendants' motion as to Counts Three and Four will be denied.

**B. Breach of Contract Claims**

Defendants also argue that Plaintiff's classification of Counts One and Two as breach of contract does not render them immune from the requirements of the statute. (Def. Br., p. 5.) Plaintiff, although never directly confronting this issue, argues that neither the breach of contract claims nor the negligence claims are subject to the requirements of the statute. (Pl. Opp., p. 4.)

Although the statute may apply to claims sounding in both contract and tort, traditional contract actions are not subject to the statute. In Couri, the plaintiff brought a breach of contract action against a psychiatrist, the defendant, when he released a report to the plaintiff's wife without his consent. 801 A.2d at 1136. The New Jersey Supreme Court held that "[i]t is not the label placed on the action that is pivotal but the nature of the legal inquiry." Id. at 1141. The court reasoned that the purpose of the statute–to "weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court"–would be furthered by focusing on the proofs required for plaintiff's claim. Id. at 1140-41. Accordingly, the court concluded that:

> when asserting a claim against a professional covered by the statute, whether in contract or in tort, a claimant should determine if the underlying factual allegations of the claim require proof of a deviation from the professional standard of care for that specific profession. If such proof is required, an affidavit of merit shall be mandatory for that claim, unless either the statutory, [section] 2A:53A-28, or common knowledge exception applies.

Id. at 1141.

Thus, the determination of whether a claim falls under the statute requires an examination of the type of evidence required to prove the underlying factual allegations. Therefore, not every complaint against a licensed professional acting in his professional capacity is subject to the statute. It is only those claims that require proof of a deviation from a professional standard of care that will require an affidavit of merit unless an exception applies.

In this case, Defendants contend that the statute applies to Plaintiff's breach of contract claims because the alleged harm arises out of Defendants' conduct as insurance producers and, therefore, requires proof of a deviation from the standard of care.[4] However, Plaintiff argues that the breach of contract claims do not require expert testimony because the issue is not a breach of the standard of care. Specifically at issue is which coverage applies: the blanket coverage that Plaintiff believed he had, based on the insurance binder and letters that he received from Defendants; or the insurance coverage actually procured by Defendants. (Pl. Opp., p. 5.) Moreover, the Plaintiff asserts in his reply that he does not intend to rely on expert testimony to prove his claims. Id.

The Court finds that Plaintiff's breach of contract claims do not require evidence of a deviation from the professional standard of care for the insurance producer profession. Rather, Plaintiff intends to prove that the Defendants' procured a different amount of coverage from that indicated in Defendants' confirmatory letters. Therefore, Defendants' motion as to Counts One

---

[4] Specifically, Defendants suggest that Plaintiff will need to put forth expert testimony "relating to whether [they] exercised the requisite skill or diligence of a reasonably prudent insurance broker." (Def. Reply, p. 2.) Further, Defendants argue that Plaintiff will be required to produce "expert testimony to address industry standards for insuring urban apartment complexes." (Def. Reply, p. 4.)

and Two will be denied.[5]

## CONCLUSION

Based on the foregoing, Defendants' motion to dismiss [26] Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to file an affidavit of merit will be denied.

An appropriate Order will issue this date.


                                                 /S/ Joseph H. Rodriguez
                                                 JOSEPH H. RODRIGUEZ
                                                 U.S.D.J.

Dated: November 1, 2005

---

[5] In addition, given this Court's disposition with regard to the negligence claims, even if the breach of contract claims were construed to involve the breach of a duty of care owed by a professional licensee, they would not be subject to the statute because the common knowledge exception applies. See section A., supra.